Norbert Stern and Gizella Stern v. Commissioner.
Stern v. Commissioner
Docket No. 46965.
United States Tax Court
T.C. Memo 1954-87; 1954 Tax Ct. Memo LEXIS 158; 13 T.C.M. (CCH) 614; T.C.M. (RIA) 54192; June 30, 1954, Filed Sidney B. Gambill, Esq., and Robert F. Banks, Esq., for the petitioners. Edward L. Cobb, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in the petitioner's income tax of $8,991.61 and $14,472.95 for the calendar years 1948 and 1949. The only issue for decision is whether six properties sold by the petitioner during the taxable years were held for investment or "primarily for sale to customers in the ordinary course of his trade or business" within the meaning of section 117(a)(1). Findings of Fact Norbert and Gizella Stern, husband and wife, filed joint income tax returns for the calendar years 1948 and 1949 with the collector of internal revenue for the Twenty-third District of Pennsylvania. Norbert has operated drive-in and indoor theatres *159 since 1940. He has been in the real estate business in Pittsburgh since 1941 dealing in all kinds of property including commercial and residential property, apartments and vacant land. He dealt actively in real estate during the taxable years. Much of the property which he held for resale was rental property which was rented at the time he purchased it and continued to be rented after he sold it. Norbert held a real estate broker's license during the taxable years but did not use it in his business. He had no signs, did no advertising and maintained no customer lists. Norbert acquired four properties numbered 5625-5627, 5635-5637, 5641-5645 and 5663-5667 Hobart Street for $251,764.38 on April 30, 1947. Each building contained 12 to 14 apartments with garages attached. They were built in 1923-1924. Norbert held the Hobart properties for the following periods: 5625-5627 Hobart
20 months
5635-5637 Hobart
13 1/2 months
5641-5645 Hobart
13 1/2 months
5663-5667 Hobart
11 months The properties were rented and were operated by a management agency which was paid a management fee. The following is a summary of rental income and expenses on the Hobart properties: May 1-Dec. 31
1947
1948
Gross Rents
$27,010.45
$23,329.01
Expenses
21,147.89
24,009.36
Net Income (Loss)
$ 5,862.56
($ 680.35)
*160 Norbert had "maintenance and repair" expenses of $3,358.99 and $2,182.88 for the years 1947 and 1948, respectively. The properties were put up for sale by Norbert no later than February 1948 and were sold for $281,000 in April and June 1948 and January 1949. The properties were sold through brokers on nonexclusive listings. Norbert and Charles Morris each acquired a one-half interest in some land at the corner of Center Avenue and Neville Street on December 30, 1947. They commenced building a store which was to be leased to The Kroger Company, a grocery chain, in accordance with a lease signed December 12, 1947. The building was completed sometime after July 5, 1948. Kroger began paying rent on July 15, 1948, and started business in August. Norbert started taking depreciation on the building on July 15, 1948. The property was mortgaged in August 1948. Norbert and Morris entered into an agreement on November 5, 1948 to sell the property to J. Sandels Morrow. A broker, representing Norbert, had spoken to Morrow about the property 15 to 30 days prior to the signing of the sales agreement. The broker supplied Morrow with a statement of income and expenses of the property. The property *161 was sold for $130,000 subject to the Kroger lease and subject to the mortgage. Morrow acquired the property by deed January 5, 1949. Norbert had rental income of $3,300, expenses of $2,095.88 and net income of $1,204.12 from the Center and Neville property during the period January 25 through December 31, 1948. Norbert acquired a house and lot on the corner of Babcock and Evergreen Streets on February 17, 1949 for $11,500. He had previously ascertained that the American Oil Company was interested in erecting a service station on that location. The property was not zoned commercial and American could not get a permit for the service station so no lease was signed with American. Norbert sold the house and a part of the lot on September 21, 1949 for $8,500 and the rest of the ground in 1954 for a price not shown by the record. The portion of the original cost attributable to the house and ground sold in 1949 was $7,437.14. Norbert reported the gain from the sales of 5635-5637, 5641-5645 and 5663-5667 Hobart Street as long-term capital gain in 1948 and the gain from the sales of 5625-5627 Hobart Street, Center and Neville, and Babcock and Evergreen as long-term capital gain in 1949. *162 The Commissioner determined that the gains "derived from the sales of real estate" in the years 1948 and 1949 "represent ordinary income." Norbert reported net income (or net loss) from rental properties, long-term capital gains and short-term capital gains from real estate transactions as follows: Long-Term
Short-Term
Rental
Capital
Capital
Year
Income
Gains
Gains
1945
$ 5,387.43
$ 1,669.87
$ 5,739.24
1946
12,281.06
22,150.12
22,265.00
1947
8,062.61
46,561.76
33,228.94
1948
7,145.68
26,562.16
9,616.83
1949
6,783.53
19,163.90
13,277.08
1950
(3,795.66)
7,543.56
9,289.92
Norbert did not segregate his properties into "investment" and "for resale" categories in his records and files or on his tax returns with one exception, the Medical Arts Building which was a partnership venture. The Hobart, Center and Neville, and Babcock and Evergreen properties were held by Norbert primarily for sale to customers in the ordinary course of his trade or business and were not held primarily for investment. The stipulations of facts and exhibits attached thereto are incorporated herein by this reference. Opinion MURDOCK, Judge: Norbert *163 concedes that he was in the real estate business during the taxable years and all properties sold by him during those years were sold in the ordinary course of that business with the exception of the Hobart Street properties, Center and Neville property, and the Babcock and Evergreen property which he contends were purchased by him primarily for investment and not for resale and were held for more than six months. The amounts of the gains are not in dispute. The only question is whether they were sales of capital assets resulting in capital gains within the meaning of section 117. A person engaged in the real estate business may have property which is a capital asset in his hands because he is holding it for investment and not primarily for sale to customers in the ordinary course of his trade or business. Section 117(a)(1). . However, the testimony of the taxpayer that he held the property for investment rather than for sale, must be supported by other evidence showing that he treated the alleged investment property differently from the other property which he admittedly held for sale to customers in the ordinary course of his business. *164 . The evidence here fails to disclose a pattern of behavior by Norbert with respect to these six properties inconsistent with an intention to sell them to customers in the ordinary course of his business upon receipt of an acceptable offer, and it fails to show that his intention with respect to these six properties differed so materially from that which he held with respect to his other properties as to support his statement that he held the six primarily for investment. The properties present somewhat different situations. Norbert claims that he originally bought the Hobart Street properties for investment but later decided to sell them because of the low income which they produced, because their run-down condition required extensive repairs, and because the continuation of rent controls prevented him from increasing the rentals. He said that he had to have a year's experience with a piece of property to see whether or not it proved to be profitable. A statement of income and expenses was furnished to him at the time he purchased those properties and the rents which he obtained were just about what he might have expected. He says *165 that he spent more on the properties than he would have spent on properties which he intended to sell. The amounts which he spent were not unreasonably large when compared to the cost of the properties. The need for repairs was always obvious. He also said that the assessment had been changed, but he did not say how that affected the situation. These were rental properties but other properties, admittedly held for sale, were also rental properties which were occupied continuously by tenants. He did not give details of the purchases and sales of those other properties and no comparisons are possible. The property at Babcock and Evergreen consisted of land and a building. The petitioner said that he bought the property with the intention of leasing it to the American Oil Company for a service station. The property had not been zoned for commercial use and a service station could not be built upon it. It is significant that the petitioner has not shown whether his intention was to lease the entire property to American or merely the area separate from the house. The house and land appurtenant thereto was the only part of the property that was sold during the taxable years and Norbert *166 has not shown that that portion of the property was bought for investment purposes or that it was not at all times held primarily for sale to customers in the ordinary course of his business. Perhaps the Center and Neville property presents the strongest case for the petitioners. That was vacant land upon which a store building for lease to Kroger was to be erected. Such a building was actually erected, and if it had been held for a significant period thereafter the evidence might support his contention that he intended to hold it for investment rather than resell it. But shortly after the building was completed it was sold at a profit. Norbert said he sold that property because the construction costs were greater than he anticipated and, as a result, the rental fixed in the lease did not provide an adequate return. The total cost of the property was $109,218.26 and the gross rental was $14,400. The net rental was not shown, but it is not clear that it did not represent a fair return on the investment. Norbert also complained of the assessment on the property but did not disclose how that affected him or when. Norbert made no segregation of his properties to indicate that some *167 were held for investment while others were held for sale to customers. In fact the only segregation that appears is that in reporting his gains or losses from sales of all properties, he regarded all sales of properties held for more than six months as capital transactions. The profits on the other sales were necessarily taxable as ordinary income. He said that he did not otherwise segregate the properties because he did not consider himself to be a dealer. Yet he admitted that most of the properties were held for resale. The six properties here in issue and two others, 222 Cable Street and Lot 89, Baum Boulevard, were the only ones sold during the taxable years which had been held for more than six months, except three drive-in theatres which were used in another of his businesses. Lot 89 was first claimed by Norbert to be an investment property, but at the trial he conceded that he had held it primarily for sale to customers in the ordinary course of his business. He sustained a loss on the Cable Street property which he reported as a capital loss, but the Commissioner allowed it as an ordinary loss and Norbert does not contest that adjustment, so that the principal distinction shown *168 by the record between the properties here in issue and the properties admittedly held for sale to customers was that the former were not sold within six months and the latter were sold more quickly. The fact that the petitioner held a real estate broker's license is of no significance under the circumstances. The fact that Norbert had no signs, did not advertise, and maintained no customer lists is likewise of little significance because there was ready sale for properties during these years and brokers constantly approached Norbert offering properties to him and offering to buy properties from him. The record as a whole does not justify the conclusion that the Hobart, Center and Neville, or Babcock and Evergreen properties were held by Norbert primarily for investment and not primarily for sale to customers in the ordinary course of his business. , affd. ; . Other issues raised by the pleadings have been conceded. Decision will be entered for the respondent.